UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PAGE ZERINGUE** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO.** |
| **VERSUS** | * | |
| | * | **SECTION** |
| | * | |
| **MONSTER ENERGY COMPANY** | * | **MAGISTRATE** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

NOW INTO COURT comes Plaintiff, Page Zeringue, who respectfully represents the following:

### I. Introduction

1. Plaintiff commences this employment discrimination action against Defendant Monster Energy Company, Inc. (hereafter "Monster"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., which in relevant part prohibits employment discrimination on the basis of sex and/or retaliation.

2. As will be more fully explained below, Plaintiff was employed by Monster who discriminated against her in violation of Title VII because of her gender by subjecting her to sexual harassment and/or a hostile work environment that was orchestrated by three high-level company executives. As a consequence of her refusal of the unwanted sexual advances perpetrated against her and/or her complaint to Monster's Human Resources Department regarding one unwanted sexual advance in particular, Monster encouraged a hostile working environment wherein she was subjected to punitive, harsh treatment from these high level executives, was alienated from her co-workers, was the recipient of an illegitimate disciplinary write-up and ultimately was wrongfully

terminated from her employment.

3. Plaintiff brings this cause of action to vindicate her rights guaranteed by Title VII. She seeks the full measure of available relief including declaratory, equitable, compensatory and punitive remedies as well as attorney's fees and costs.

## II. Jurisdiction and Venue

4. This Court has jurisdiction over Plaintiff's Title VII claims pursuant to Title 42 U.S.C. § 2000e-5(f)(3). This Court additionally has federal question jurisdiction over Plaintiff's Title VII claims pursuant to Title 28 U.S.C. § 1331. She has timely filed charges of discrimination with the Equal Employment Opportunity Commission and she has brought suit within 90 days of receipt of her notice of right to sue. Plaintiff has performed all conditions and exhausted all remedies necessary to bring this action.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because this is a district wherein a substantial part of the events giving rise to this claim has occurred.

## III. Parties

6. Plaintiff herein is Page Zeringue, a female person of full age of majority and domiciled in the Parish of Orleans, State of Louisiana. At all times relevant hereto, she was employed with Monster.

7. Defendant herein is Monster Energy Company, a subsidiary of Monster Beverage Corporation, a Delaware Corporation. Monster Energy Company is licensed to do, and actively engages in, business within the State of Louisiana. At all relevant rimes, Monster has continuously been an employer pursuant to 42 U.S.C. §2000(e), et seq.

## IV. Statement of Facts

8. Plaintiff was hired by and began working for Monster in February 2008, as a Trade

Development Manager for the Louisiana Market Unit in New Orleans, LA. She received merit increases, positive performance reviews and bonuses for her outstanding accomplishments and work ethic until she was promoted in November 2011, to Region Manager of the Louisiana Market Unit. As a Region Manager she received additional merit increases, positive performance reviews and bonuses. Plaintiff enjoyed a positive workplace environment within which she developed friendships.

9. In July of 2014, John Kenneally, Monster's East Business Unit Vice-President/General Manager, began pursuing a sexual relationship with Plaintiff. This pursuit violates Monster's Policy Against Harassment. Specifically, during a company business outing on Bourbon Street, Kenneally flirted with and made unwelcome and unsolicited sexual advances toward Plaintiff. During the weeks subsequent to this outing, Kenneally began sending text messages to Plaintiff's business phone. He explained to her that he was interested in replacing her with Monster's current East Business Unit Field Marketing Manager, Maria Behr. During this exchange, Kenneally tells Plaintiff that "he will put a hit out" on Behr for filing a sexual discrimination and retaliation complaint against him with Monster's Human Resources department.

10. In August 2014, via email, Plaintiff reported to Human Resources the sexual harassment perpetrated by Kenneally. Kenneally found out about the report to HR by accessing Plaintiff's company email account and told Plaintiff that it was not against company policy. Plaintiff requested a copy of the HR Handbook. Kenneally maintained his relentless sexual interest of Plaintiff and ultimately in late August 2014, Plaintiff succumbed to the advances of her supervisor. Subsequent to the beginning of the relationship, Monster's Human Resources Department dismissed Behr's sexual harassment complaint against Kenneally and Behr resigned. Kenneally promoted Plaintiff to the East Business Unit's Field Marketing Manager in September 2014. At this position Plaintiff was

in part required to work closely with and report directly to Kenneally. By December 2014, Kenneally again promoted Plaintiff to Senior Field Marketing Manager of the Eastern Business Unit, which again in part required Plaintiff to work closely with and report directly to Kenneally. Although Plaintiff lived in New Orleans, LA, and Kenneally lived in Atlanta, GA, the two spent much time together on the phone and frequently met for both business and pleasure.

11. Soon after Plaintiff succumbed to Kenneally's incessant pursuit in September 2014, Kenneally developed an obsession with Plaintiff's fidelity and the relationship became fraught with heated arguments that included abusive language and name calling. The relationship became on-again and off-again throughout the following months and the lines that had existed between the once healthy yet separable professional and personal relationships had become blurred. Kenneally, convinced that he could not trust Plaintiff's fidelity in a sexual relationship also became convinced that he could not trust Plaintiff as an employee. He would frequently tell Plaintiff that as a result of their personal differences he could not work with her. He would question her ability to competently work for the company and suggested demotions and possibly her leaving the company altogether.

12. Plaintiff learned in September 2014 that another Monster employee, Fran Pulizzi, was involved in a sexual harassment complaint against Kenneally, her then supervisor, stemming from an incident in May 2014 at an EBU team meeting in Orlando, Florida. Plaintiff later learned that Kenneally retaliated against Pulizzi for her involvement with the complaint, causing her to take leave from work due to the emotional distress consequent.

13. Also in September 2014, Plaintiff's work life became miserable, with Kenneally becoming more possessive, abusive, and obsessively controlling every move of Plaintiff. She had to report to Kenneally and closely work with him as her supervisor yet if she attempted to break off the personal relationship he punished her with a difficult, caustic demeanor. Additionally, the arguments between

them escalated even more and involved topics oscillating between work and relationship woes. The abusive language intensified after Kenneally went through her phone messages looking for messages from any man and would threaten Plaintiff if she went to Human Resources. Kenneally would lambast Plaintiff with names such as "cunt, whore and slut" throughout her employment and in particular in March 2015 and would make rude and vulgar suggestions that she sleep with other men, sometimes multitudes of men at once. What's more, these escalations included threats to Plaintiff's job security.

14. Compounding the situation for Plaintiff was the unwanted sexual advance of Monster's Mid-South Director, Ted Cook, nicknamed by some within the company as "Touchy Ted," for his flirtatious and inappropriate manner with female employees at Monster. On January 8, 2015, Plaintiff and Cook were alone in a convention room while between meetings at a Monster business conference when Cook conspicuously looked over toward Plaintiff's breasts and asked her if they were real. Plaintiff was shocked and speechless. Cook then began commenting on the breasts of another female employee with specificity as to whether they were fake, their size and quality. Page indicated that she was not interested in Cook at that time however this did not stop Cook from inappropriately grabbing her and pressing his chest tightly up against hers at a later part of the conference.

15. On February 10, 2015, Kenneally told Plaintiff that she had Borderline Personality Disorder and Attention Deficit Disorder. Kenneally called Plaintiff as whore and verbally berated her.

16. In February 2015, Kenneally began telling Plaintiff that he wanted her out of the company, which was confirmed by Maria Hagin, and that Cook, who reported to Kenneally, told Kenneally he should fire her, and that Cook was justified in being furious at Plaintiff for filing a sexual harassment; all a retaliatory response in violation of Monster's Sexual Harassment Policy.

17. On April 10, 2015, Plaintiff resorted to the drastic plea of requesting a demotion in the company just to get away from Kenneally. He denied her request, stating that if she was to be demoted he would control when and how it would be done.

18. Kenneally's explosive anger was visible to others. For example, while Plaintiff and Kenneally traveled together from a business trip in Tampa, Florida in May 2015, Kenneally's outrage caught the attention of the airport police who filed a police report on the encounter. When Plaintiff once suggested to Kenneally that she would seek assistance from Monster's Human Resources department, he threatened to turn other employees against her to discredit her claims. Cognizant of what had transpired with both Maria Behr and Fran Pulizzi, Plaintiff took Kenneally's threats seriously and she decided to maintain their tenuous relationship. She was dependent upon her job and could not afford to leave Monster.

19. Pursuant to a restructuring of the Eastern Business Unit in June 2015, Lauren Brown, a personal friend of Kenneally, replaced Kenneally as Plaintiff's supervisor. Brown begins to communicate through Kenneally about Plaintiff and rarely communicates giving Plaintiff direction or support. Kenneally wanted the restructure so he could force Plaintiff out and began to feed false information to Lauren Brown to write Plaintiff up.

20. On June 13, 2015, Plaintiff applies for Customer Marketing position and had a telephone interview with Geoff Bremmer, VP of marketing. Plaintiff advises Lauren Brown of her application for which Ms. Brown advises Plaintiff she was in support. Plaintiff later learns that Lauren Brown advised Kenneally that there was no way Plaintiff would get the position and she would make sure of that. Plaintiff was denied promotion.

21. Kenneally, obsessed with maintaining a sexual relationship with Plaintiff, provided her with the advice she sought. Aware of Kenneally's intentions and dependent upon her job, Plaintiff decided

that she had to walk a fine line between engaging with Kenneally cordially yet professionally. At times, Kenneally would lose his temper and once again engage in the scornful, abusive language that once pervaded their sexual relationship.

22. During these moments he would not abstain from his colorful, yet misguided assaults, on Plaintiff's private sexual life. At times he suggested in vulgar ways that she sleep with other people to satisfy her lascivious desires, while and at other times wrongfully accusing her of sleeping with other people. All again, in violation of Monster's Policy Against Harassment. He would aggressively accuse her of being an untrustworthy employee because of fabricated sexual infidelities that he was convinced to have transpired in the past.

23. On July 13, 2015, against company policy, Kenneally hires Ann Joo to work for him at his home. Plaintiff began confiding in Ann Joo, a personal friend and co-worker, her thoughts and feelings. Joo, also a friend of Kenneally, became a mediator between the two. She often offered Plaintiff advice on how to get along with Kenneally in light of his abrasive nature and in light of his sexual obsession with Plaintiff of which Joo was keenly aware. Plaintiff also confided in co-worker and friend Jamie Lee Hogan. When Joo told Kenneally that Plaintiff had confided in Hogan, Kenneally exploded on Plaintiff during a subsequent conversation.

24. Throughout the months subsequent to Cook's commentary, he began to treat Plaintiff differently and unfairly by signaling her out at times and ignoring her during other times. For example on July 22, 2015, Ted overreacted with Plaintiff over a misunderstanding with regards to a ticket exchange and its process, blowing it out of proportion. Plaintiff felt that this treatment was due to her unequivocal rejection to Cook's sexual overtures. This precarious situation with Cook generated emotional grief which built up over time and it compounded the emotional suffering extant with Kenneally. Therefore, after dealing with the prolonged, unpleasant treatment from both of these

high level executives, Plaintiff, cognizant of Kenneally's threats to demote her, fire her, or blackball her, Plaintiff decided to ease her emotional burden somewhat by filing a sexual harassment complaint against Cook alone with Monster's Human Resources Department on August 7, 2015.

25. On August 26, 2015, Human Resources determined that Cook had violated the terms of Monster's Sexual Harassment Policy and disciplined him. Cook became distraught and told Plaintiff's immediate supervisor, Lauren Brown, what had transpired that same day. Brown, who worked under and was personal friends with Kenneally, expressed to Kenneally her staunch disapproval of the complaint, calling Plaintiff's "bullshit."

26. Kenneally relayed this information to Plaintiff and informed her that Brown was in the process of issuing her a disciplinary write-up. Hours later, Brown issued Plaintiff the write-up, which is the first disciplinary action ever taken against Plaintiff during her more than seven productive years at Monster. The write-up substantially consisted of vague complaints that Brown said she had received from unnamed employees. Other fabricated, illegitimate issues in the write-up improperly shifted blame onto Plaintiff.

27. Plaintiff began to feel as if these three high level employees, Kenneally, Cook, and Brown, all good friends with one another, all whom worked closely together with one another, singled her out and targeted her for rejecting Kenneally's and Cook's sexual advances and ultimately filing a grievance against Cook. She went from being a star employee whose record was replete with outstanding performance to questioning whether standing up for herself in the face of the corrosive and subversive behavior from her superiors were the lesser of two evils. She became distraught from severe emotional distress including anxiety and depression. She began having panic attacks.

28. During the period of August 2015 and onward, Kenneally aggressively pursued Plaintiff's affections with repeated unwelcome and unwanted sexual advances. When his advances were

refused, the jealousy flared and abusive treatment of Plaintiff intensified. He called her names including "cheat," "liar," and "bitch." He suggested that she "suck 50 dicks," and "fuck everyone" because she was a "whore." He often provided derisive commentary on her personal sex life.

29.   When Plaintiff told Kenneally that she was beginning to look at other companies for work in order to escape his unwanted advances, he told her that he would not provide her with a recommendation because he was unable to separate his personal feelings from business. He told her that he would destroy her name within the beverage community so that she would be unable to obtain employment elsewhere. One night, in late September 2015, Kenneally, upset that Plaintiff would not sleep with him although they were not dating, told Plaintiff that he was working with Brown to get Plaintiff fired.

30.   Meanwhile, Brown commenced badmouthing Plaintiff to others within Monster. For example, at a September 2015, business convention in Las Vegas, Brown told others including Jodie Pursel and Hogan, *inter alia*, that she had spoken to the Human Resources Department about Plaintiff's complaint against Cook, that Plaintiff had received a disciplinary write-up and that Plaintiff had "fallen off the deep end." Brown also threatened others, including Purcel and Hogan, to stay away from Plaintiff. When Plaintiff learned of Brown's behavior, her anxiety and depression worsened, and her panic attacks became more frequent. Other Monster employees including Keith Reilly and Dave Van Winkle also approached Hogan during this convention and told her to stay away from Plaintiff.

31.   Ultimately, Brown met with Plaintiff in New Orleans on October 16, 2015, and terminated her employment with Monster for reasons indicated in the August 26, 2015 disciplinary write-up. Since that time she has experienced great difficulty obtaining employment. She believes that this in part stems from her wrongful termination and in part from what untruths Brown, Cook and

Kenneally have wrongfully disseminated throughout the beverage industry, damaging her professional reputation.

32.     Plaintiff has since become embarrassed over her termination and has become socially withdrawn. She has suffered from even greater anxiety, more panic attacks and a more profound depression. To remedy this she has sought out and is still receiving professional psychiatric care.

33.     On October 16, 2015, Plaintiff spoke with Ms. Darensburg with the EEOC and filled out preliminary paperwork.  On November 20, 2015, Plaintiff filed a sexual harassment complaint against Monster with the EEOC.

## V. Claims

34.     By reason of the above conduct, Plaintiff has been the victim of employment practices that are in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*., including *quid pro quo* sexual harassment and/or a sexually hostile work environment orchestrated by Monster high level executives John Kenneally, Ted Cook and Lauren Brown.

35.     By reason of the above conduct, Monster once more violated Title VII by retaliating against Plaintiff when she reported Cook's unwelcome sexual advances to Monster's Human Resources Department.

36.     Monster's unlawful employment practices were intentional and were done with malice or with reckless indifference to Plaintiff's federally protected rights.

## VI. Prayer for Relief

Wherefore, Plaintiff respectfully requests that this Court:

37.     Order Monster to make Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement

of Plaintiff or front pay in lieu of reinstatement.

38.    Order Monster to make Plaintiff whole by providing compensation for her past and future pecuniary and non-pecuniary losses, including compensatory damages for her emotional stress, financial burdens and impact on her familial relationships, all resulting from the unlawful employment practices described above, in amounts to be determined at trial.

39.    Order Monster to pay Plaintiff punitive damages for its malicious and/or reckless conduct in derogation of Plaintiff's federally protected rights as is described above, in amounts to be determined at trial.

40.    Award Plaintiff costs, reasonable attorneys' fees and to such further relief to which Plaintiff may show herself justly entitled.

### VII. Jury Demand

41.    Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
BEEVERS & BEEVERS, L.L.P.


*/s/ Steven M. Mauterer*
WILEY J. BEEVERS, Bar #2902
SHAYNA BEEVERS MORVANT, Bar #34442
STEVEN M. MAUTERER, Bar #26682
210 Huey P. Long Avenue
Gretna, Louisiana 70053
Telephone: (504) 361-4287
Facsimile: (504) 362-1405

PLEASE SERVE:

Monster Energy Company
through its registered agent for service:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802